# UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS

RAYMOND KELLUM,

                Plaintiff,

      v.

THOMAS DART, in his official capacity as
Sheriff of Cook County and County of Cook,


                Defendants.

Civil action 1:20-cv-03795

The Honorable April Perry
Courtroom 1725

## DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW

Defendants—by and through undersigned Defense Counsel—respectfully move this Honorable Court, pursuant to Rule 50(a) of the Federal Rules of Civil Procedure, for judgment as a matter of law based upon the evidence submitted in this trial.

### INTRODUCTION

At the close of his case in chief, Kellum had not presented sufficient evidence for a jury to grant judgment in his favor and against Defendants. Specifically, Kellum has failed to prove that he suffered an underlying constitutional violation, that the Sheriff's express restraint policy is excessive or that there is a widespread practice of excessive restraint. Because a reasonable factfinder could not find Defendants liable, this Court should enter judgment as a matter of law in Defendants' favor pursuant to Rule 50(a) of the Federal Rules of Civil Procedure.

### LEGAL STANDARD

If the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the a party fully heard on an issue during a jury trial, the court may (1) resolve the issue against that party and (2) grant a motion for judgment as a matter of law against that party on any

claim or defense relying on a favorable finding on the issue. Fed. R. Civ. P. 50(a)(1). A party may move for judgment as a matter of law at any time before the case is submitted to the jury. Fed. R. Civ. P. 50(a)(2). The motion must specify the judgment sought and the law and facts that entitle the movant to the judgment. Fed. R. Civ. P. 50(a)(2). Under Rule 50(a), "the district court must enter judgment if, under the governing law, a reasonable factfinder could not find for the nonmoving party." *Shields Enterprises, Inc. v. First Chicago Corp.*, 975 F.2d 1290, 1294 (7th Cir. 1992).

### ARGUMENT

Defendants are entitled to judgment as a matter of law. Kellum has failed to prove that he suffered an underlying constitutional violation, that the Sheriff's express restraint policy is excessive or that there is a widespread practice of excessive restraint. Furthermore, Kellum has failed to present evidence of a widespread practice of restraining detainees (for 10 days) with an electronic monitoring ("EM") order. Kellum has also failed to present evidence of a widespread practice of knowingly restraining terminally ill detainees. Moreover, Kellum has failed to present evidence that Defendants' restraint policy was expressly excessive, and he has not produced evidence of a widespread practice of excessive restraints.

Section 1983 liability for constitutional violations requires personal involvement in the alleged constitutional violation. *Mitchell v. Kallas*, 895 F.3d 492, 498 (7th Cir. 2018) (explaining that a defendant's liability under Section 1983 requires that she be personally responsible for the alleged constitutional deprivation). Theories of vicarious liability are categorically incompatible with Section 1983. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).

Pursuant to *Monell v. Department of Social Services*, a plaintiff can—under certain circumstances—sue municipalities under Section 1983. *Id.* at 691–92; *Bohannon v. City of*

*Indianapolis*, 46 F.4th 669, 675 (7th Cir. 2022). In such cases, the plaintiff can sue a government official in his "official capacity," or the plaintiff can sue the municipal entity. *Cruz v. Dart*, No. 1:11-cv-00630, 2012 U.S. Dist. LEXIS 162329, at *20–21 (N.D. Ill. Nov. 13, 2012) (citing *Harris v. Denver Health Med. Ctr.*, No. 11-cv-01868, 2012 U.S. Dist. LEXIS 78461, at *7 (D. Colo. May 10, 2012) (explaining that a plaintiff can plead a Section 1983 claim against a municipality either by naming the municipality itself or by naming a municipal official in his or her official capacity). "Because the real party in interest in an official-capacity suit is the governmental entity and not the named official, the entity's 'policy or custom must have played a part in the violation of federal law.'" *Hafer v. Melo*, 502 U.S. 21, 25 (1991) (quoting *Ky. v. Graham*, 473 U.S. 159, 166 (1985)).

Beyond evidence of a constitutional violation, claims against municipal entities need admissible evidence of each element of a *Monell* claim. *Bohannon*, 46 F.4th at 675; *see Est. of Sims v. Cnty. of Bureau*, 506 F.3d 509, 514 (7th Cir. 2007). A *Monell* claim requires the plaintiff to produce admissible evidence establishing each of the following:

> (1) municipal action (*i.e.*, a policy or custom), such that the challenged conduct is properly attributable to the municipality itself;
>
> (2) municipal fault (*i.e.*, deliberate indifference to the obvious likelihood of causing the constitutional deprivation); and
>
> (3) the municipal action was the moving force behind the deprivation.

*Id.*; *see also Thomas v. Neenah Joint Sch. Dist.*, 74 F.4th 521, 524 (7th Cir. 2023); *Pulera v. Sarzant*, 966 F.3d 540, 550 (7th Cir. 2020). A lawsuit against a municipality for a constitutional violation falls apart without evidence of each of these criteria.

## I.     Kellum has failed to establish a *Monell* claim for excessive restraint.

Kellum has not presented evidence sufficient for a jury to find that Defendants subjected him to excessive restraint in violation of the Fourteenth Amendment. Kellum has failed to prove that he suffered an underlying constitutional violation, that the Sheriff's express restraint policy is

3

excessive, that there is a widespread practice of excessive restraint, or that any policymaker was deliberately indifferent.

### A. Kellum has failed to prove an underlying constitutional violation.

Kellum has not proved that he suffered a constitutional violation because he has produced no evidence that the Sheriff unjustifiably applied the restraint policy to Kellum. The evidentiary record shows that the totality of the circumstances justified applying the restraint policy to Kellum. Kellum posed a security risk at Stroger Hospital. He could access a bedside toilet, bedpan, nurse assistance was available, and Kellum could turn and change his position in the bed without assistance. The restraints were applied reasonably. And there was no medical need to make an exception to the policy.

The Due Process Clause of the Fourteenth Amendment governs pretrial detainees' claims challenging their conditions of confinement. *Moore v. Dart*, 2014 U.S. Dist. LEXIS 174676, at *5 (N.D. Ill. Dec. 18, 2014) (citing *McGee v. Adams*, 721 F.3d 474, 480 (7th Cir. 2013) ("Claims concerning the conditions of confinement of civil detainees are assessed under the due process clause of the Fourteenth Amendment.")). Constitutional claims brought by pretrial detainees under the Fourteenth Amendment are subject to an objective unreasonableness inquiry. *See Hardeman v. Curran*, 933 F.3d 816, 823 (7th Cir. 2019) (citing *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2475 (2015)). The Due Process Clause of the Fourteenth Amendment prohibits the use of bodily restraints in a manner that serves as a pretrial detainee's punishment. *May v. Sheahan*, 226 F.3d 876, 884 (7th Cir. 2000). A jail official might violate the Fourteenth Amendment if the use of restraints is not rationally related to a legitimate non-punitive government purpose, or if it is excessive in relation to such a purpose. *Id.*

1. Kellum posed a security risk at Stroger Hospital.

4

Testimony showed that the security risks of an outside hospital, like Stroger Hospital, necessitated restraining Kellum. Kellum, a detainee held on charges of Aggravated Kidnapping with Intent to Harm and Armed Habitual Criminal, was a patient at Stroger Hospital from July 8, 2022, to July 18, 2022, and from September 6, 2022, to September 17, 2022.

Unrestrained detainees can easily escape Stroger Hospital. The evidence also highlighted that Stroger has less restrictive entry and exit points, which provides an easy escape route. In addition to the less secure entry and exit points, the evidence showed that Stroger Hospital has fire escapes, which also provide an easy escape route for unrestrained detainees. The record also reflected that Stroger Hospital doors do not lock which provides another easy escape route for unrestrained detainees. The gap in security measures creates a penological interest and necessity for additional measures that would otherwise not be necessary at the jail.

Unrestrained detainees can easily harm themselves, other patients, treaters, and visitors. Detainees are not put on separate floors from non-detainees. Members of the public have access to the same hallways, elevators, and stairwells as detainees, should they be unrestrained. The evidence presented explained that detainees receiving care at Stroger wear a hospital gown like other patients rather than a CCDOC detainee uniform. That enables detainees to blend in with the other patients while leaving the unsuspecting public exposed to the threat they pose. That's particularly problematic in a hospital setting because of the countless items a detainee could weaponize against patients (who are already vulnerable), treaters, and visitors. Not restraining a detainee would create the risk that they would harm a member of the public or hospital staff, or that a member of the public or hospital staff could help (knowingly or unknowingly) a detainee obtain contraband.

Kellum adduced no evidence that contradicted or undermined the testimony of these

5

witnesses. He has also adduced no evidence that anything beyond ensuring everyone's safety and security motivated the restraint policy.

### 2. Kellum could access a bedside toilet, bedpan, and nurse assistance.

Detainees can request to use the physical bathroom but can also use a commode or a bed pan when it is not medically safe and there is no security risk. Further, Kellum had a portable bedside toilet, with a lid, which he could access by swinging himself and his chains around the side of the bed to use the toilet, returning to his bed thereafter because the shackles provided mobility. A nurse would change or empty out the toilet for him. He also had access to a bedpan. And he could use the regular bathroom if it was medically safe for him to do so.

### 3. The restraints were applied reasonably.

Assistant Executive Director Jason Cianciarulo testified that Sheriff's officers' responsibility is the care, custody, and control of detainees until they are either released by the judge or given a sentence. The evidence shows that correctional staff took that care seriously. Officer Ronald Ansel testified that the restraints are checked at the beginning and end of each shift, and additional discretional checks are conducted as necessary to ensure they are properly applied. He uses a two-finger test to ensure that a restraint is not too tight on a detainee's ankle or wrist. He stated that if he can fit two fingers between the restraint and the limb, he knows there is enough slack in place so that it is not causing harm.

### 4. There was no medical need to make an exception to the policy.

The absence of medical orders proves that the restraints were not objectively unreasonable. The Sheriff's officers must make security decisions but still defer to medical staff for medical decisions. Detainees at Stroger Hospital are under the care of medical professionals. Aside from

6

helping a detainee to the bathroom, they cannot freely allow ambulation or activity that would undermine the detainee's treatment without a special order. Kellum's evidence showed that the restraining policy does not impede medical care, particularly in the testimony from Dr. Ilie. In fact, the policy was built to incorporate leeway for medical necessity, so as not to be unjustified. Medical staff are allowed, at any time, to enter an order to remove the restraints for care of the detainee patient. When an order is placed, it is almost always approved. Nurse Assa testified that, in her experience, an officer has never once refused her request to have restraints removed. Nurse Assa explained that the doctor determines whether a detainee's restraints should be removed. Dr. Lad corroborated that evidence with his testimony that he did not even need an order. In fact, Dr Lad testified that when he asked the officers to take off the shackles, they complied every time. He went on further to say that the shackles never interfered with patient care, and Kellum never complained about injuries. Dr. Bruce and Dr. Ilie corroborated Dr. Lad's testimony when each described the same absence of any issue when requesting removal of restraints to examine his patients who are detainees. Adjustments can be made, even without a doctor's orders, if the restraints are too tight. The restraint provides enough slack for detainees to turn from side to side, reposition themselves, eat, and sit up.

The evidence showed that Kellum was able to complain to both medical and correctional staff regarding the restraints and have them adjusted. If there was a medical issue with the restraints, the doctors and nurses could demand their removal. If there was an issue with the restraints, it would be documented in the medical record. The medical testimony proves that the medical staff would enter an order for restraint removal if medically necessary. From that, the evidence allows only one conclusion: There was no medical reason for Kellum to be unrestrained. Therefore, restraining him was not excessive.

**B. Kellum has not shown that the express policy is excessive.**

There is no dispute that the Sheriff's restraint policy is an express policy. There is also no dispute that it facially dictates consideration of the totality of the circumstances when retraining detainees in the hospital. Indeed, the policy as written specifically denotes that the use of restraints should be applied in a manner relative to the totality of the circumstances.

It's not excessive to have a policy of restraining people when it's based on the totality of the circumstances because such a policy takes into consideration the facts that could justify modification or removal of restraints depending on circumstances. The only way Kellum can potentially prove that the use of restraints was excessive is if the express policy was applied differently than as written. However, as noted below, he has no evidence showing a widespread practice of applying the written policy in an excessive manner.

Kellum suggested that his illness undermines the penological interest in restraining him. However, the testimony made clear that deputies and correctional staff are not only unaware of the specific medical status of a detainee, but they are also barred by HIPAA from accessing this information. Therefore, evidence of medical illness is not applicable to test the policies' excessiveness. A reasonable officer could not have known to adjust the restraints on a medical basis without an express order from a medical professional. Kellum did not present a single witness that testified that orders for accommodations based on medical need were not followed, and both correctional and medical witnesses testified that no order was ever denied. And, as this Court pointed out, there is no evidence that the first order from Dr. Zylstra was not followed.

In sum, Kellum introduced no evidence that the restraint policy is excessive in relation to its rational government purpose.

**C. Kellum showed no widespread practice of causing pain while restraining detainees at outside medical facilities.**

8

Kellum also failed to provide evidence of a widespread practice at outside medical facilities, or even just at Stroger Hospital, causing injury to detainees through the use of restraints. "When a plaintiff chooses to challenge a municipality's unconstitutional policy by establishing a widespread practice, proof of isolated acts of misconduct will not suffice; a series of violations must be presented to lay the premise of deliberate indifference." *Palmer v. Marion Cnty.*, 327 F.3d 588, 596 (7th Cir. 2003). Nothing in the record shows that restraints injured Kellum, let alone any other instances to show more than isolated acts of misconduct.

When medical notes were presented to Nurse Assa, she testified that there was no pain or irritation from the restraints. Nurse Assa testified that the care of their patients is important to them and their obligation is to their patients, not the Sheriff's Office. Nurse Assa testified that she had no reason to believe that the restraints injured Kellum. Had she observed an injury, it would be noted in the records. Kellum's medical records show no indication of any injury caused by restraints.

Having failed to produce any evidence of his own injury, Kellum has similarly failed to show the existence of injuries caused to other detainees, as required to show a widespread practice. In fact, the record is remarkably lacking in any indication that any other detainee suffered any injury due the application of restraints. Without any such evidence or testimony, Kellum has failed to meet the burden of showing a widespread practice.

### D. *Kellum shows no widespread practice of excessive use of restraints.*

Kellum simply speculates that there exists a widespread practice of excessive restraints based on the fact that all detainees are restrained. For *Monell* liability to attach under the widespread practice theory, it is well established "'that the practice [must be] widespread and that the specific violations complained of were not isolated incidents.'" *Thomas v. Neenah Joint Sch.*

9

*Dist.*, 74 F.4th 521, 525 (7th Cir. 2023) (quoting *Gill v. City of Milwaukee*, 850 F.3d 335, 344 (7th Cir. 2017)).  To prove a *Monell* claim, plaintiffs cannot rely on their own individual experiences without evidence of other constitutional violations.  *Dean v. Wexford Health Sources, Inc.*, 18 F. 4th 214, 240 (7th Cir. 2021)  Because the evidence adduced in Kellum's case-in-chief failed to show constitutional violations via excessive use of restraints for the specific instances brought in his evidence, Kellum cannot demonstrate a widespread practice of applying restraints in an excessive manner.

The witnesses Kellum called consistently testified that serious risks of injury to medical staff treating the detainees, security staff guarding the detainees, the members of the public admitted to and visiting Stroger Hospital, and the detainees themselves, exist when detainees are hospitalized outside the secure confines of the Cook County Department of Corrections.  Officer Ansel testified today that he takes his job seriously and  just wants to get everyone home. He went on further to opine that if detainees were unrestrained, it would be easy for a detainee to escape from Stroger. Assistant Executive Director Cianciarulo testified individuals try to escape, access medical devices and access contraband.

Because the evidence adduced in Kellum's case-in-chief failed to show constitutional violations via excessive use of restraints for the specific instances brought in his evidence, Kellum cannot demonstrate a widespread practice where the practice itself is not a violation.  For these reasons, there is no widespread practice of violating detainee's rights.

## II.     Kellum's delayed placement on EM cannot constitute a *Monell* claim.

Kellum has failed to establish a Section 1983 claim against the Sheriff or the County for not placing Kellum on EM.  He has not shown that his delayed placement on EM was because of a policy, widespread practice, or final policymaker's decision.  And no policy or widespread practice was the moving force behind the delayed placement on EM.

10

Plaintiffs cannot use *Monell* to shoehorn a theory of respondeat superior. A policy cannot establish *Monell* liability simply because of how employees administer the policy. *See Harris v. Cnty. of Cook*, No. 19-cv-4598, 2024 U.S. Dist. LEXIS 71780, at *45 (Apr. 19, 2024) ("For example, [the plaintiff] must show that the cleaning policy itself—'not simply the actions of the employees administering it'—directly caused his conditional deprivation." (citing *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 239 (7th Cir. 2021))). To establish a widespread practice, a plaintiff must demonstrate that an unwritten practice "is so well entrenched and well-known as to carry the force of policy." *Milchtein v. Milwaukee Cnty.*, 42 F.4th 814, 826 (7th Cir. 2022). "Providing boilerplate allegations of a municipal policy, or pointing to a few isolated incidents of official action will not suffice to show the existence of such a practice." *Id.*

Here, Judge Hood entered the EM order on September 6, 2022—within hours of Kellum being sent to Stroger Hospital for a spiked fever. Kellum alleges that the Sheriff "took no action" to place Kellum on EM despite a court's order to take Kellum to his sister's house to stay on EM. But Kellum remained hospitalized until September 17, 2022. Kellum remained at Stroger to receive medical care, despite the Sheriff maintaining physical custody of Kellum. Stroger, not the jail, required Kellum to remain at the hospital because of his medical conditions. Kellum's hospitalization created a practical impossibility for immediate EM placement. Such a rule would be absurd and potentially life-threatening. And, remember, the Sheriff's Office *did* band Kellum at the hospital.

Further, the September 6, 2022, EM order itself contemplated that placement might not be immediately possible. The order said: "If the Defendant cannot be placed on Electronic Home Monitoring for any reason, the Defendant shall be remanded to the court within 72 hours." (ECF No. 183-1 at 8.) This provision demonstrates the court's recognition that circumstances might

11

prevent immediate EM placement. Kellum's hospitalization constituted precisely such a circumstance. The medical facility determined when Kellum could be discharged; the Sheriff could not unilaterally remove a patient from a hospital who was receiving medical treatment simply to comply with an EM order. The Sheriff's Office could not physically return Kellum to court within 72 hours as the order directed because Kellum remained hospitalized under medical care during that period. Nonetheless, John Rosales, the Cook County Sheriff's Office Liaison, notified the judge and court personnel on September 9, 2022, that Kellum could not be placed on EM. PX 407. Dr. Ilie even testified that Kellum should be in the hospital at least four-to-five days after his elbow procedure. Thus, physically returning Mr. Kellum to the judge or transporting him to his sister's house was against medical determinations and reasonable medical care.

There is no evidence of express policy of failing to band at the hospital or disregarding court orders. Kellum has failed to prove that. Kellum has presented no evidence that anyone with authority knew of any such practice. Without any evidence of an element of his claim he cannot succeed. And there is no evidence that a person with policymaking authority decided not to band Kellum at the hospital. External Operations Superintendent Jason Cianciarulo was never assigned to EM and has no role in EM and has no knowledge of anyone who wasn't placed on EM after an order was entered. Nevertheless, there is no stipulation about a widespread practice of not following EM orders or not banding at the hospital.

### CONCLUSION

Because a reasonable factfinder could not find Defendants liable, this Court should enter judgment as a matter of law in Defendants' favor pursuant to Rule 50(a) of the Federal Rules of Civil Procedure. Kellum has failed to produce evidence enough for a jury to find in his favor. Kellum has failed to prove that he suffered an underlying constitutional violation, that the Sheriff's express restraint policy is excessive, that there is a widespread practice of excessive restraint, or

that any policymaker was deliberately indifferent. Furthermore, Kellum has failed to present evidence of a widespread practice of restraining detainees (for 10 days) with an EM order. Kellum has also failed to present evidence of a widespread practice of knowingly restraining terminally ill detainees. Moreover, Kellum has failed to present evidence that Defendants' restraint policy was expressly excessive, and he has not produced evidence of a widespread practice of excessive restraints.

Respectfully submitted,

June 24, 2026

Samuel Branum
Johnson & Bell Ltd.
33 West Monroe Street
Suite 2700
Chicago, Illinois 60603
T: +1 (312) 372-0770
E: Branums@jbltd.com

Kristin Linderman
Moniel Sanders
Jonathan Wheeler
Cook County State's Attorney's Office
50 West Washington Street
Suite 500
Chicago, Illinois 60602
T: +1 (312) 603-4389
E: Kristin.Linderman@cookcountysao.org
E: Moniel.Sanders@cookcountysao.org
E: Jonathan.Wheeler@cookcountysao.org
Attorneys for Defendants

## CERTIFICATE OF SERVICE

I, Kristin K. Lindemann, hereby certify that on June 24, 2026, I electronically filed the foregoing **DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW** with the Clerk of the Court for the United States District Court for the Northern District of Illinois Eastern Division by using the CM/ECF system and was served upon the person named pursuant to the District Court's ECF system.

*/s/Kristin K. Lindemann*
Kristin K. Lindemann