**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| RAMONE KULLUM, as the Special Administrator for Raymond Kellum, | ) ) ) ) | |
| *Plaintiff,* | ) ) | Case No. 20-cv-3795 |
| *-vs-* | ) ) ) | Judge April M. Perry Magistrate Jeannice W. Appenteng |
| THOMAS DART, Sheriff of Cook County, and COOK COUNTY, ILLINOIS, | ) ) ) | |
| *Defendants.* | ) | |

**DEFENDANTS' RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW AND MOTION FOR NEW TRIAL OR TO ALTER OR AMEND JUDGMENT**

Defendants, THOMAS J. DART, in his official capacity as Sheriff of Cook County, and

COOK COUNTY, ILLINOIS, by their attorney EILEEN O'NEILL BURKE, State's Attorney of

Cook County, through her Special Assistant State's Attorneys, JOHNSON & BELL, LTD., move

for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(b) and move for

an order granting a new trial or, in the alternative, to alter or amend the judgment pursuant to

Federal Rule of Civil Procedure 59(a) and 59(e).

**INTRODUCTION**

The jury's verdict must be set aside. Rule 50(b) authorizes judgment as a matter of law

when a reasonable jury lacks a legally sufficient evidentiary basis to find for the nonmovant. Fed.

R. Civ. P. 50(b). On this record, no rational jury could find for Plaintiff. Alternatively, Rule 59(a)

permits a new trial when the verdict is against the manifest weight of the evidence or the trial was

unfair, and Rule 59(e) permits amendment of the judgment. Fed. R. Civ. P. 59(a) and 59(e).

Plaintiff did not prove an underlying constitutional violation, much less municipal liability

under *Monell*. The trial evidence showed that the Cook County Sheriff's Office restraint policy

1

balances security needs in an unsecured community setting with medical judgment. The policy expressly allows physicians and nurses to request modification or removal of restraints, and the medical professionals uniformly testified that officers complied when such requests were made. The medical records contain no documentation that restraints injured Raymond Kellum.

Nor did Plaintiff prove a widespread practice of constitutional violations. The Sheriff's Office policy is not unconstitutional on its face, and Plaintiff offered evidence of only Kellum's own hospitalizations. He identified no other detainee whose restraints were applied excessively, no instance in which officers disregarded medical instructions, and no other detainee who remained restrained after entry of an electronic monitoring order. A plaintiff must show that the challenged practice is widespread and that the alleged violations were not isolated incidents. Three or four instances involving the same person do not establish a widespread practice as a matter of law. *Hildreth v. Butler*, 960 F.3d 420, 426–27 (7th Cir. 2020). No rational jury could find deliberate indifference when Plaintiff presented no evidence that a policy-making official knew of constitutional violations and allowed them to continue.

The verdict cannot be reconciled with the evidence. A rational jury viewing the evidence under the proper legal standards could not find that the Sheriff's Office maintained an express policy or widespread practice of excessive use of restraints. The jury's verdict cannot stand.

## FACTUAL BACKGROUND

Raymond Kellum ("Kellum") was a pretrial detainee at the Cook County Department of Corrections facing charges of aggravated kidnapping, armed habitual criminal, and other charges. (Tr. Trans. 642:1–10.) He was held on a no-bond order that was later modified to a $750,000 bond. (*Id.* at 370:19–25, 401:1–3.) Kellum was hospitalized at Stroger Hospital from July 8 to 13, 2022, and from September 6 to 17, 2022. During both hospitalizations, Kellum posed a security risk and was secured in restraints pursuant to Policy 709. (Tr. Trans. 371:12–372:25.)

2

On September 6, 2022, a state court judge entered an order directing that Kellum be transported to his sister's house and placed on electronic monitoring. (Pl.'s Ex. 406 at 2, ECF No. 201-13.) That same day, Kellum was transported to the emergency room at Stroger Hospital due to a spiked fever. (Tr. Trans. 650:18–651:2.) Kellum remained hospitalized receiving medical treatment for an infection in his right elbow until September 17, 2022. (*Id.* at 199:18–23.) Kellum's treating physicians testified they could request removal of restraints if medically necessary, and such requests were honored. (*Id.* at 40:11–14, 219:23–220:7.) The restraints did not impede Kellum's treatment or recovery. (*Id.* at 41:20–12, 257:4–19.) On September 16, 2022, the Sheriff's Office placed an electronic monitoring band on Kellum at the hospital. (*Id.* at 448:11–13.)

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 50(b), a party may renew its motion for judgment as a matter of law. Fed. R. Civ. P. 50(b). A movant is entitled to judgment as a matter of law if a reasonable jury would not have a legally sufficient evidentiary basis to find for the non-moving party. *Xingjian Sun v. Gang Xu*, 99 F.4th 1007, 1013 (7th Cir. 2024).

Under Federal Rule of Civil Procedure 59(a), a district court may grant a new trial if the trial was "fundamentally unfair to the movant or the jury's verdict went against the manifest weight of the evidence." *Ruiz-Cortez v. City of Chicago*, 931 F.3d 592, 602 (7th Cir. 2019). Under Federal Rule of Civil Procedure 59(e), a district court may alter or amend a judgment in cases where there has been a manifest error of law or newly discovered evidence. *Edgewood Manor Apartment Homes, LLC v. RSUI Indem. Co.*, 733 F.3d 761, 770 (7th Cir. 2013) (citation omitted).

## ARGUMENT

To hold a municipality liable for a constitutional violation, a plaintiff must meet three requirements: (1) policy or custom; (2) municipal fault; and (3) "moving force" causation. *Orozco v. Dart*, 64 F.4th 806, 823 (7th Cir. 2023). Three kinds of municipal action support *Monell* liability:

3

(1) an express policy; (2) a widespread practice; or (3) a constitutional injury caused by a final policymaker. To prove the municipal fault element, a plaintiff must show deliberate indifference, which "is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Id.* at 824. A plaintiff must also demonstrate "a direct causal link" between the municipal action and the constitutional violation. *Id.*

**I.      The Evidence Did Not Establish Municipal Liability Under *Monell*.**

The Sheriff's Office does not have an express policy or widespread practice of using restraints on hospitalized detainees in an excessive manner. At a minimum, the evidence at trial did not establish either path of *Monell* liability.[1] In cases where a municipality's policy *itself* violates federal law, resolving issues of fault and causation is "straightforward." *Bd. of the Cty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997). On the other hand, where a plaintiff claims that a municipality's policy has caused an employee to violate the plaintiff's constitutional rights, "rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee." *Id.* at 405; *see also First Midwest Bank v. City of Chicago*, 988 F.3d 978, 986–87 (7th Cir. 2021).

In policy cases, a plaintiff fails to establish *Monell* liability where the evidence establishes only that the "application" of the policy "results in a constitutional violation." *Calderone v. City of Chicago*, 979 F.3d 1156, 1164 (7th Cir. 2020). If that is all the plaintiff establishes, the plaintiff "has not carried [his] burden to demonstrate causation and culpability." *Id.* A plaintiff must meet a more demanding standard: the plaintiff must demonstrate either: (1) "the policy is itself unconstitutional"; or (2) "a series of constitutional violations." *Id.* Although a single constitutional

---

[1] Plaintiff did not proceed under the third path of *Monell* liability (decision by final policymaker) and did not present any evidence that a final policymaker made a decision with respect to restraints used on Kellum. Only the first two paths of *Monell* liability were included in the jury instructions. (Jury Instruction No. 16.)

violation may impose *Monell* liability where the violation was caused "by an existing, unconstitutional municipal policy," "considerably more proof than the single incident will be necessary" in cases where the policy relied upon is not itself unconstitutional. *Id.* (quoting *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823–24 (1985)).

A plaintiff seeking to hold a municipality liable for a facially lawful policy that has caused a constitutional violation "must demonstrate that the municipal action was taken with 'deliberate indifference' as to its known or obvious consequences." *Lapre v. City of Chicago*, 911 F.3d 424, 430 (7th Cir. 2018) (quoting *Brown*, 520 U.S. at 407)); *see also Ruiz-Cortez*, 931 F.3d at 598 (stating that where a "practice is not 'itself' violative of any federal right," a plaintiff must show that the local government "engaged in that practice with deliberate indifference to the fact that it would lead officers to violate federal law").

Even a facially constitutional policy that "fails to give detailed guidance that might have averted a constitutional violation by an employee" does not give rise to municipal liability. *Spiegel v. McClintic*, 916 F.3d 611, 618 (7th Cir. 2019) (citation omitted). At a minimum, a plaintiff must prove that the local government "anticipated or intended" that the written policy would be implemented to violate a person's constitutional rights. *Id.*

The Sheriff's Office policy on the use of restraints is facially constitutional, and the jury did not hear any evidence of a series of constitutional violations. No reasonable jury could find for Plaintiff, and the jury's verdict is against the manifest weight of the evidence.

**A.** **The Sheriff's Office policy on the use of restraints is facially constitutional.**

The evidence established that the Sheriff's Office restraint policy relates to legitimate security interests and balances those interests with medical needs through exceptions, including the removal or modification of restraints pursuant to a physician's order. Policy 709 requires detainees to be secured in a manner "relative to the totality of circumstances." (Defs' Ex. 16 at 4,

ECF No. 201-18.) Pursuant to the policy, restraints "should not interfere with medical procedures or tests" and "shall balance the safety and security of the inmate, sworn members, health care professionals and the public." (*Id.*) "An inmate should be allowed to use the bathroom upon request and when it is medically safe to do so." (*Id.*)

The jury heard uncontroverted evidence that restraints may be removed for medical procedures, tests, bathroom use, end-of-life care, and other circumstances. Director Cianciarulo testified that medical professionals may enter an order to remove or alter the restraints, and the Sheriff's Office follows those orders. (Tr. Trans. 373:16–374:6.) Bathroom access is provided as long as medical staff determines it is safe for the detainee to get up and use the bathroom. (*Id.* at 374:7–22.) Restraints will be removed when a detainee is receiving end-of-life care as determined by a doctor. (*Id.* at 294:15–295:4.) As such, Plaintiff cannot rely on Policy 709 as a basis for *Monell* liability for excessive use of restraints during his July and September hospitalizations because the policy has safeguards built in that allow for the reasonable use of restraints.

Policy 709 does not address electronic monitoring orders or the use of restraints on hospitalized detainees after an electronic monitoring order is entered. Thus, Plaintiff cannot rely on Policy 709 as a basis for *Monell* liability for the use of restraints when Kellum was ordered on electronic monitoring during his September hospitalization. The policy is facially constitutional, and therefore, the only path Plaintiff had to a verdict was to prove a widespread practice of constitutional violations. As set forth in the next section, Plaintiff did not present that evidence.

**B.**    **Plaintiff did not prove a widespread practice of excessive use of restraints or that a policy-making official knew of such a practice and allowed it to continue.**

Plaintiff failed to meet his burden on his widespread practice theory. A plaintiff alleging municipal liability based on a practice must prove "that the practice is widespread and that the specific violations complained of were not isolated incidents." *Thomas v. Neenah Joint Sch. Dist.*,

74 F.4th 521, 524 (7th Cir. 2023); *see also Thomas v. Cook Cty. Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2009) (stating that a jury must find that the municipality had a widespread practice that caused "the alleged constitutional harm"). "[P]roof of isolated acts of misconduct will not suffice; a series of violations must be presented to lay the premise of deliberate indifference." *Reck v. Wexford Health Sources, Inc.*, 27 F.4th 473, 488 (7th Cir. 2022).

The Seventh Circuit has held that a plaintiff's personal experiences alone—even multiple incidents—cannot satisfy *Monell*'s "widespread practice" requirement. *Hildreth*, 960 F.3d at 426–27 (explaining that three or four incidents involving only the plaintiff are insufficient for *Monell* liability); *Thomas*, 74 F.4th at 525 (stating that evidence of only "two isolated incidents" is insufficient to show a pattern of constitutional violations).

At trial, Plaintiff presented evidence only of Kellum's own hospitalizations.[2] This is insufficient as a matter of law. *See Hildreth*, 960 F.3d at 426–27; *Thomas*, 74 F.4th at 525. Plaintiff presented *no evidence* of any other detainee whose restraints were applied excessively. Plaintiff presented *no evidence* of any other detainee whom a medical professional determined should not be in restraints that was not followed by the Sheriff's Office. Plaintiff presented *no evidence* of any other detainee who was in restraints after a judge entered an electronic monitoring order. Without this evidence, the jury had no basis to find a widespread practice of constitutional violations. *See Calderone*, 979 F.3d at 1164.

In addition, Plaintiff presented *no evidence* that a "policy-making official" knew of constitutional violations and allowed them to continue. (*See* Jury Instruction No. 16, ECF No. 204.) The only evidence of a policy-making official was Assistant Executive Director Jason Cianciarulo, by stipulation of the parties. (Tr. Trans. 447:12–24.) Yet, the only knowledge

---

[2] Plaintiff introduced an exhibit at trial relating to another detainee, Jeffrey Pendleton, who passed away, but Plaintiff did not present any evidence of an excessive use of restraints.

attributed to Director Cianciarulo was that hospitalized detainees were "secured with one arm and the opposite leg to the bed." (*Id.*) This is legally insufficient for *Monell* liability on Kellum's July and September hospitalizations. The stipulation confirms only Director Cianciarulo's knowledge of the general practice of using restraints to keep members of the community safe—nothing more. It does not establish knowledge of restraints being used in an excessive manner. A *Monell* plaintiff must prove more than a widespread practice of constitutional conduct; he must prove "a series of constitutional violations." *Calderone*, 979 F.3d at 1164.

Regarding the use of restraints after entry of the electronic monitoring order during Kellum's September hospitalization, Plaintiff did not identify any policy-making official who knew of, and approved, a practice of keeping hospitalized detainees in restraints after the detainee was ordered on electronic monitoring. Director Lasharme Collins and Olivia Soja both testified they do not make policy for the Sheriff's Office. (Tr. Trans. 141:12–16, 482:5–6.) Director Collins testified that, pursuant to training and policy, detainees are placed on electronic monitoring bands at the hospital and the restraints removed. (*Id.* at 491:22–24, 493:11–17, 494:21–25, 495:18–21, 496:15–497:14.) The record does not contain any evidence of a widespread practice of not banding detainees at the hospital, and in fact, the evidence established the opposite. (*Id.*) The only evidence of a detainee being in restraints after an electronic monitoring order was entered was a single instance relating to Kellum. This is insufficient as a matter of law to prove a widespread practice.

The jury did not hear any evidence of similar alleged constitutional violations, did not hear any evidence of any other use of restraints alleged to be excessive, and did not hear any evidence of restraints used on other detainees after entry of an electronic monitoring order. No reasonable jury could find that the Sheriff's Office had a widespread practice of *excessive* use of restraints, and the jury's verdict is against the manifest weight of the evidence.

**II. The Evidence Did Not Establish an Underlying Constitutional Violation.**

A municipality cannot be held liable under *Monell* "when there is no underlying constitutional violation by a municipal employee." *Doxtator v. O'Brien*, 39 F.4th 852, 864 (7th Cir. 2022) The alleged underlying constitutional violation was the use of bodily restraints that served to punish Kellum. (Jury Instruction No. 16.) To establish a constitutional violation, Plaintiff was required to prove that (1) the use of bodily restraints on Kellum was not rationally related to a legitimate non-punitive government purpose; or (2) the use of bodily restraints on Kellum was excessive in relation to the purpose the bodily restraints allegedly served. (*Id.*)

**A. Plaintiff did not prove that the restraints were not rationally related to a legitimate non-punitive government purpose.**

The evidence overwhelmingly established that the use of restraints in an unsecure, hospital setting is a legitimate non-punitive government purpose. The evidence established multiple security risks that necessitated restraints. Director Cianciarulo testified extensively about the security challenges presented by Stroger Hospital as compared to the secure Cook County Jail facility. Unlike the jail, which has large walls, concertina wire, "vast camera systems, security doors, security gates," and "[m]ultiple layers of security to prevent escape or contraband," Stroger Hospital is not a secure facility. (Tr. Trans. 354:7–355:8.) Stroger Hospital has doors without locks and rooms without cameras. (*Id.* at 182:15–24.) "Anyone from the lobby can get to the 7th floor" via public elevators. (*Id.* at 357:3–11.) Fire exits "are accessible to everybody." (*Id.*)

Director Cianciarulo further testified that detainee rooms are located "[r]ight around the corner" from civilian patient rooms, with no locked security doors separating them. (*Id.* at 356:19–357:14.) Members of the public can access the hallways near detainee rooms. (*Id.*) An unrestrained detainee could reach elevators, fire escapes, and other hospital rooms. (*Id.*) The physical layout of Stroger Hospital creates a security risk that is different from inside the jail and is substantially less

9

secure than the Cook County Jail. (*Id.* at 357:15–23.) Defendants' expert Jeffrey Eiser, who has over 30 years of corrections experience, testified that transporting detainees to outside hospitals is "probably one of the most risky things officers do." (*Id.* at 642:22–25.) He explained that "you never know how an incarcerated person is going to act once they're outside the jail." (*Id.* at 627:15–628:1.) Eiser testified that officers "can never assume anything" because they "never can predict the behavior of an inmate" outside the secure perimeter. (*Id.*)

This testimony established a clear rational relationship between restraints and the legitimate purpose of securing detainees in an unsecured hospital environment.

### B. Plaintiff did not prove that the restraints were excessive in relation to that purpose.

The evidence showed that the use of restraints on Kellum was not excessive. The jury heard uncontroverted evidence that Kellum was charged with aggravated kidnapping with intent to inflict bodily harm and armed habitual criminal—serious violent felonies. (Tr. Trans. 371:12–20.) He was initially detained on a no-bond order, meaning the judge determined no amount of money could ensure his appearance at trial or community safety. (*Id.* at 370:19–25.) Kellum presented a security risk while at the hospital, justifying the use of restraints.

Eiser testified that based on Kellum's charges of aggravated kidnapping and armed habitual criminal, Kellum posed a security threat while housed at Stroger Hospital. (*Id.* at 642:1–10.) With such serious charges, officers "would have an extra level of consciousness as to what the individual is capable of." (*Id.* at 643:6–9.) Director Cianciarulo testified that correctional officers must constantly be on guard and that they "never know what will happen or what can happen." (*Id.* at 358:18–24.) Even if a detainee appears cooperative and non-threatening, officers cannot reduce security because inmates may use that as manipulation to attempt escape or to cause harm. (*Id.* at 359:17–360:18.)

10

Officers do not have medical training to know how Kellum's medical condition affected his physical strength. (*Id.* at 377:2–4.) Even frail and weak detainees present security risks, including risk of harm and escape. Director Cianciarulo testified that even someone frail and weak could, if given the right circumstances or opportunity, attempt to grab an officer's firearm. (*Id.* at 362:11–25.) Being frail and weak would not prevent a detainee from disarming an officer, and if that occurred, "[u]nfortunately, it would be ultimately someone losing their life." (*Id.*)

The jury also heard uncontroverted evidence that there are exceptions to the use of restraints for medical procedures, tests, bathroom use, end-of-life care, and other circumstances. Medical professionals may enter an order to remove or alter the restraints on a detainee, and the Sheriff's Office follows those orders. (Tr. Trans. 373:16–374:6.) Bathroom access is provided as long as medical staff determines it is safe for the detainee to get up and use the bathroom. (*Id.* at 374:7–22.) Restraints will be removed when a detainee is receiving end-of-life care as determined by a doctor. (*Id.* at 294:15–295:4.) The evidence also showed that Kellum retained essential mobility and function while restrained. (*Id.* at 174:20–175:8, 376:7–23.) The restraints provide enough slack for detainees to turn from side to side, reposition themselves, eat, and sit up. (*Id.*)

Multiple medical witnesses, who are not employed by the Sheriff's Office, confirmed this process worked in practice. Dr. Thomas Lad testified that when he needed the restraints removed, the officers removed them. (*Id.* at 40:11–14.) Dr. Lad further testified that restraints never interfered with his treatment of his patients. (*Id.* at 41:20–42:1.) During Kellum's September hospitalization, orthopedic surgeon Dr. Zachary Zylstra entered an order on September 10, 2022, that it was okay to remove the restraints. (Pl.'s Ex. 24 at 1, ECF No. 201-3.) The next day, Dr. Ahmad Nanaa entered an order that it was okay to remove the restraints for physical therapy purposes. (Pl.'s Ex. 25 at 1, ECF No. 201-4.) No evidence was presented that those medical orders

were not followed. Indeed, the medical records document that Kellum received occupational and physical therapy and that the officers "removed [the restraints] at start of session." (Defs' Ex. 24, ECF No. 201-19; Defs' Ex. 25, ECF No. 201-20.) Nurse Assa Skaria testified that an officer has never once refused her request to have restraints removed. (Tr. Trans. 512:7–9.)

Critically, Kellum's medical records contain no documentation of injuries caused by restraints. Nurse Skaria testified that the nursing notes documented that the skin under the restraints were intact and did not cause any injury. (*Id.* at 518:10–23.) Dr. Lad testified he was not aware of any injuries that Kellum suffered due to the restraints. (*Id.* at 42:7–12.) When asked whether Kellum "ever complain[ed] to [him] about being in pain or being injured by the restraints," Dr. Lad answered "No." (*Id.*) Dr. Ionut Ilie testified the restraints did not impede Kellum's treatment or recovery. (*Id.* at 257:4–19.) This absence of documented injury is significant. Plaintiff failed to prove even a single injury to Kellum from restraints, much less "a series of violations." *Palmer v. Marion County*, 327 F.3d 588, 596 (7th Cir. 2003).

**C.      Plaintiff did not prove that use of restraints after entry of the electronic monitoring order was a constitutional violation.**

The restraints used after entry of the electronic monitoring order were not excessive and did not violate Kellum's constitutional rights. The order did not require immediate release. It gave the Sheriff's Office 72 hours to place Kellum on electronic monitoring and expressly anticipated that placement might not occur: "If the Defendant cannot be placed on Electronic Home Monitoring for any reason, the Defendant shall be remanded to the court within 72 hours." (Pl.'s Ex. 407 at 8, ECF No. 201-15.) That language matters. It recognized that circumstances could prevent immediate placement on electronic monitoring.

Those circumstances existed here. The state court judge ordered the Sheriff's Office to transport Kellum to his sister's home and place him on electronic monitoring, but Kellum was

12

admitted to Stroger Hospital on an emergency basis the same day the order was entered. (*Id.* at 650:22–24.) Director Collins testified that a hospitalized detainee must be medically cleared and have a place to stay before being banded at the hospital, and that the Sheriff's Office must wait for medical clearance because it cannot interfere with medical care. (*Id.* at 481:22–482:2, 485:19–21.) Because Kellum was receiving emergency medical care, the Sheriff's Office could not remove him from the hospital and transport him to his sister's home on electronic monitoring until medical staff released him. (*Id.* at 651:3–9.) Nor could Kellum be discharged until medical staff coordinated an ambulance, hospice care, and oxygen. (*Id.* at 243:12–17, 247:10–248:2.)

Medical professionals—not the Sheriff's Office—controlled when Kellum could be discharged or medically cleared for placement on electronic monitoring. The Sheriff's Office could not unilaterally remove a hospitalized patient from medical care to comply with a transportation order, and the Sheriff's Office could not interfere with that care by banding Kellum before medical clearance. (*Id.* at 481:22–482:2, 485:19–21.) When Kellum was not medically cleared within the 72-hour period, the Sheriff's Office court liaison notified the judge on September 9, 2022, that Kellum could not be placed on electronic monitoring. (*Id.* at 479:15–480:4.) Because Kellum remained hospitalized, he also could not be physically remanded to court. (*Id.*)

Plaintiff presented no evidence that Kellum was medically cleared for placement on electronic monitoring before September 16, 2022, when the Sheriff's Office placed the electronic monitoring band on him at the hospital. Until then, Kellum remained in the Sheriff's custody as a pretrial detainee, and the restraint policy continued to serve legitimate security purposes in an unsecured hospital setting. No rational jury could find that otherwise constitutional restraints became unconstitutional where an electronic monitoring order existed but could not be implemented until medical professionals cleared Kellum to be banded and discharged.

13

**III.      Defendants Are Entitled to a New Trial Because the Legally Insufficient Electronic Monitoring Theory Infected the Jury's Verdict on the Use of Restraints Claim.**

Even if this Court concludes that Plaintiff presented sufficient evidence to survive judgment as a matter of law on the use of restraints claim, Defendants are entitled to a new trial under Federal Rule of Civil Procedure 59 because the improperly submitted electronic monitoring theory infected the jury's deliberations and verdict. *See Abel v. Miller*, 824 F.2d 1522, 1537 (7th Cir. 1987) (holding that a jury's "verdict cannot stand" where the district court did not remove from jury consideration improper theories of recovery). Allowing the jury to deliberate over evidence of a single instance of a detainee being in restraints after entry of an electronic monitoring order, alongside a claim this Court may deem viable, rendered the trial fundamentally unfair and requires a new trial on the use of restraints without evidence of the legally insufficient electronic monitoring theory.

Whether the electronic monitoring evidence was legally sufficient to support a *Monell* claim should have been resolved as a matter of law before the case was submitted to the jury. As detailed in Section I.B. above, Plaintiff failed to establish the existence of a widespread practice regarding electronic monitoring orders that would support *Monell* liability. Plaintiff's evidence on restraints being applied after entry of an electronic monitoring order consisted exclusively of a single instance involving Kellum himself, with no evidence of any other detainee in similar circumstances. Because Plaintiff failed to present evidence that the alleged electronic monitoring practice extended beyond Kellum's own case, this alleged practice should have been resolved in Defendants' favor under Rule 50(a) before submission to the jury.

Submission of the legally insufficient electronic monitoring theory alongside the use of restraints claim created prejudicial spillover that infected the verdict. A new trial is warranted when the jury's verdict resulted from "passion and prejudice that infected the rest of the verdict." *Arroyo*

14

*v. Volvo Grp. N. Am., LLC*, 93 F.4th 1066, 1071 (7th Cir. 2024). Here, evidence of the electronic monitoring order and the use of restraints was inextricably intertwined during trial. The jury deliberated on both simultaneously. Under those circumstances, the jury could not segregate its consideration of the two theories or prevent evidence and arguments regarding the electronic monitoring order from influencing its assessment of the use of restraints claim.

The prejudicial spillover is particularly acute here because the electronic monitoring claim was inflammatory and likely evoked strong negative reactions from the jury, even though Plaintiff failed to prove the existence of any widespread practice. When jurors were exposed to evidence and argument about electronic monitoring that should never have reached them, they inevitably carried those impressions into their deliberations on the use of restraints claim. Jurors who found the electronic monitoring evidence particularly troubling may have expressed their disapproval through their verdict on the use of restraints claim.

A movant is entitled to a new trial when "the trial was fundamentally unfair to the movant." *Ruiz-Cortez*, 931 F.3d at 602. The denial of Defendants' Rule 50(a) motion deprived Defendants of their right to have the legally insufficient electronic monitoring theory resolved as a matter of law and forced them to defend against evidence that should never have reached the jury. This error rendered the trial fundamentally unfair and mandates a new trial.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court grant their renewed motion for judgment as a matter of law, vacate the jury's verdict, enter judgment in their favor—or in the alternative, grant a new trial or alter or amend the judgment—award Defendants their costs, and grant such other and further relief as the Court deems just and proper.

15

Respectfully submitted,

JOHNSON & BELL, LTD.

Dated: July 24, 2026

/s/ *Samuel D. Branum*
Johnson & Bell, Ltd.
33 W. Monroe, Ste. 2700
Chicago, Illinois 60603
(312) 372-0770
branums@jbltd.com


EILEEN O'NEILL BURKE
State's Attorney of Cook County

/s/ *Kristin K. Lindemann*
Assistant State's Attorney
Civil Actions Bureau – Civil Rights and Torts
Cook County State's Attorney's Office
500 Richard J. Daley Center
Chicago, IL 60602
(312) 603-3473
kristin.lindemann@cookcountysao.org

16